# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

EDWINA TENORIO,

   **Plaintiff,**

v.              Civ. No. 17-138  SCY

NANCY A. BERRYHILL,
**Acting Commissioner of the**
**Social Security Administration,**

   **Defendant.**

## MEMORANDUM OPINION AND ORDER[1]

**THIS MATTER** is before the Court on the Social Security Administrative Record (Doc. 17)[2] filed June 12, 2017, in connection with Plaintiff's *Motion to Reverse and Remand for Rehearing, With Supporting Memorandum,* filed September 11, 2017. (Doc.  22.)  Defendant filed a Response on November 9, 2017.  (Doc. 24.)  And Plaintiff filed a Reply on November 27, 2017.  (Doc. 25.)  The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c).  Having meticulously reviewed the entire record and the applicable law and being fully advised in the premises, the Court finds that Plaintiff's motion is not well taken and shall be **DENIED**.

## I.  Background and Procedural Record

Plaintiff Edwina Tenorio (Ms. Tenorio) alleges that she became disabled on November 2, 2012, at the age of forty-five because of a math disability, speech impediment, hypothyroidism, heart palpitations, anxiety, hand-eye coordination problems, mental disability, and depression.

---

[1]  Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings, and to enter an order of judgment, in this case.  (Docs. 4, 8, 9.)

[2]  Hereinafter, the Court's citations to Administrative Record (Doc. 17), which is before the Court as a transcript of the administrative proceedings, are designated as "Tr."

(Tr. 223, 226.)  Ms. Tenorio completed three years of college in 2000, and worked as a thrift store processor and big box retail sales associate.  (Tr. 227, 228.)  Ms. Tenorio's date of last insured was December 31, 2017.  (Tr. 223.)

On April 11, 2013, Ms. Tenorio protectively filed applications for Social Security Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act"), 42 U.S.C. § 401 *et seq*., and for Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. § 1381 et seq.  (Tr. 201-04, 205-11.)   Ms. Tenorio's applications were denied at the initial level (Tr. 82-92, 93, 94, 95-105, 138-142), and at reconsideration (Tr. 106-118, 119, 120, 121-133, 143-47).  Upon Plaintiff's request, Administrative Law Judge (ALJ) Frederick Upshall, Jr., held a hearing on July 27, 2015. (Tr. 53-81, 149.)  Ms. Tenorio appeared at the hearing with attorney representative Ione E. Gutierrez.[3]  (Tr. 53.)  The ALJ took testimony from Ms. Tenorio (Tr. 58-72), and from impartial vocational expert (VE), Nicole King (Tr. 72-79.)  On September 1, 2015, ALJ Upshall issued a written decision concluding that Ms. Tenorio was "not disabled" pursuant to the Act.  (Tr. 32-47.) On January 10, 2017, the Appeals Council denied Ms. Tenorio's request for review, rendering ALJ Upshall's September 1, 2015, decision the final decision of Defendant the Commissioner of the Social Security Administration.  (Tr. 1-8.) Ms. Tenorio timely filed a complaint on January 30, 2017, seeking judicial review of the Commissioner's final decision.  (Doc. 1.)

## II.  Applicable Law

### A.      Disability Determination Process

An individual is considered disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be

---

[3] Ms. Tenorio is represented in this proceeding by Francesca J. MacDowell.  (Doc. 1.)

expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance benefits); *see also* 42 U.S.C. § 1382(a)(3)(A) (pertaining to supplemental security income disability benefits for adult individuals).  The Social Security Commissioner has adopted the familiar five-step sequential analysis to determine whether a person satisfies the statutory criteria as follows:

(1) At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[4]  If the claimant is engaged in substantial gainful activity, she is not disabled regardless of her medical condition.

(2) At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s).  If the claimant does not have an impairment(s) or combination of impairments that is severe and meets the duration requirement, she is not disabled.

(3) At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement.  If so, a claimant is presumed disabled.

(4) If, however, the claimant's impairments do not meet or equal in severity one of the listing described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform his "past relevant work."  Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [claimant] can still do despite [his physical and mental] limitations." 20 C.F.R. § 404.1545(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3). Second, the ALJ determines the physical and mental demands of claimant's past work.  Third, the ALJ determines whether, given claimant's RFC, the claimant is capable of meeting those demands.  A claimant who is capable of returning to past relevant work is not disabled.

(5) If the claimant does not have the RFC to perform her past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age,

---

[4] Substantial work activity is work activity that involves doing significant physical or mental activities.  20 C.F.R. §§ 404.1572(a).  Work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before.  *Id.*  Gainful work activity is work activity that you do for pay or profit.  20 C.F.R. §§ 404.1572(b).

> education, and work experience.  If the Commissioner is unable to make that
> showing, the claimant is deemed disabled. If, however, the Commissioner is
> able to make the required showing, the claimant is deemed not disabled.

See 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); *Fischer-Ross v. Barnhart*, 431

F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).  The

claimant has the initial burden of establishing a disability in the first four steps of this analysis.

*Bowen v. Yuckert*, 482 U.S. 137, 146, n.5, 107 S.Ct. 2287, 2294, n. 5, 96 L.Ed.2d 119 (1987).

The burden shifts to the Commissioner at step five to show that the claimant is capable of

performing work in the national economy.  *Id.*  A finding that the claimant is disabled or not

disabled at any point in the five-step review is conclusive and terminates the analysis.  *Casias v.*

*Sec'y of Health & Human Serv.*, 933 F.2d 799, 801 (10th Cir. 1991).

## B.    Standard of Review

The Court reviews the Commissioner's decision to determine whether the factual

findings are supported by substantial evidence in the record and whether the correct legal

standards were applied.  42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir.

2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004).  A decision is based on

substantial evidence where it is supported by "relevant evidence [that] a reasonable mind might

accept as adequate to support a conclusion."  *Langley*, 373 F.3d at 1118.  A decision "is not

based on substantial evidence if it is overwhelmed by other evidence in the record[,]"  *Langley,*

373 F.3d at 1118, or if it "constitutes mere conclusion."  *Musgrave v. Sullivan*, 966 F.2d 1371,

1374 (10th Cir. 1992).  Therefore, although an ALJ is not required to discuss every piece of

evidence, "the record must demonstrate that the ALJ considered all of the evidence," and "the

[ALJ's] reasons for finding a claimant not disabled" must be "articulated with sufficient

particularity."  *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996).  Further, the decision

must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005). In undertaking its review, the Court may not "reweigh the evidence" or substitute its judgment for that of the agency. *Langley*, 373 F.3d at 1118.

## III. Analysis

The ALJ made his decision that Ms. Tenorio was not disabled at step five of the sequential evaluation.[5] (Tr. 45-47.) The ALJ determined that Ms. Tenorio met the insured status requirements of the Social Security Act through December 31, 2017 (Tr. 37), and that she had not engaged in substantial gainful activity since November 1, 2012, the alleged onset date. (*Id.*) He found that Ms. Tenorio had severe impairments of anxiety disorder, learning disorder, speech impediment, cardiac palpitations, and obesity. (*Id.*) The ALJ determined, however, that Ms. Tenorio's impairments did not meet or equal in severity one the listings described in the governing regulations, 20 CFR Part 404, Subpart P, Appendix 1. (Tr. 38-40.) Accordingly, the ALJ proceeded to step four and found that Ms. Tenorio had the residual functional capacity to perform a full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). The ALJ found that Ms. Tenorio

> can stand/walk up to six hours in an eight-hour workday and sit up to six hours in an eight-hour workday. She is able to push/pull within the light exertional level weight limits (up to 20 pounds occasionally and 10 pounds frequently) and could occasionally climb ramps/stairs but never climb ladders/ropes/scaffolds. She should avoid concentrated exposure to environmental irritants such as fumes, odors, dusts, gases and poorly ventilated areas. She should avoid all use of moving machinery and all exposure to unprotected heights. She is limited to unskilled work performed in a work environment that does not include fast-paced production requirements, involving only simple work-related decisions, with few, if any, changes in the workplace. She can tolerate only occasional interaction with the public, incidental to the work performed, and only occasional interaction with coworkers. The claimant cannot perform math beyond the fifth grade level,

---

[5] The ALJ determined at step four that Ms. Tenorio may be capable of performing her past relevant work as a garment sorter, but given uncertainties proceeded to step five. (Tr. 45-47.)

and is limited to occupations that do not require fast processing and quick hand-eye coordination and detail. The claimant is limited to occupations that do not require frequent verbal communication.

(Tr. 41.) The ALJ concluded at step four that Ms. Tenorio may be able to perform her past relevant work as a garment sorter, but given uncertainties proceeded to step five. (Tr. 45.) At step five, the ALJ determined that based on her age, education, work experience, RFC, and the testimony of the VE, that there were jobs existing in significant numbers in the national economy that Ms. Tenorio could perform. (Tr. 45-47.)

In support of her Motion, Ms. Tenorio first argues that the ALJ's RFC determination is contrary to the substantial evidence in the record and contrary to the governing law because (1) the Appeals Council failed to consider medical records that were dated after the ALJ's September 1, 2015, decision and improperly considered them out of time; (2) the ALJ's findings were inconsistent with NP Christine Lujan-Pino's medical source statements, and the ALJ failed to provide legitimate reasons for discounting NP Lujan-Pino's December 4, 2012, medical source statement; (3) the ALJ, having accorded great weight to the nonexamining State agency psychological consultant opinions, failed to account for all of the limitations they assessed; and (4) the ALJ relied on improper factors in evaluating statements regarding the intensity, persistence, and limiting effects of Ms. Tenorio's alleged disability. (Doc. 22 at 13-21.) Ms. Tenorio next argues that the ALJ's past work finding at step four contained legal error because (1) the RFC is not supported by substantial evidence; (2) the ALJ failed to make specific findings about Ms. Tenorio's past work as a garment sorter; and (3) the ALJ's "tentative finding" at step four renders it unsupported by substantial evidence. (*Id.* at 22-23.) Lastly, Ms. Tenorio argues that the ALJ's step-five finding was in error because (1) the ALJ's RFC is not supported by substantial evidence; and (2) the ALJ's RFC is inconsistent with jobs identified because they

require a reasoning level of two which is inconsistent with Ms. Tenorio's moderate limitation in her ability to understand and remember detailed instructions. (*Id.* at 23-24.)

The Commissioner argues that the ALJ's RFC determination is supported by substantial evidence because (1) the Appeals Council noted that the materials submitted after the ALJ's determination were made a part of the record and properly concluded that the information did not provide a basis for changing the decision; (2) the ALJ reasonably discounted NP Lujan-Pino's December 2012 medical source statement for reasons that are supported by substantial evidence; (3) the Appeals Council properly concluded that NP Lujan-Pino's November 2015 medical source statement did not change the ALJ's decision because it was about a later time; (4) the ALJ properly relied on the nonexamining State agency psychological consultant's narrative conclusions in assessing Ms. Tenorio's mental RFC; and (5) the ALJ cited to regulatory criteria that was supported by record evidence to determine that Ms. Tenorio's statements about her alleged disabilities were inconsistent. (Doc. 24 at 5-18.) The Commissioner also contends that the ALJ's step four findings are supported by substantial evidence because the ALJ classified Ms. Tenorio's past work using both vocational expert testimony and the DOT. (*Id.* at 18-19.) The Commissioner asserts, however, that any error at step four is harmless because the ALJ made findings at step five that are supported by substantial evidence. (*Id.*) Finally, the Commissioner contends that the ALJ did not err in his step five findings because (1) the RFC is supported by substantial evidence; and (2) unskilled work does not require the ability to understand, remember or carry out detailed instructions, and  Tenth Circuit case law supports that a limitation to simple work is not inconsistent with reasoning level two jobs. (*Id.* at 19-21.)

As fully discussed below, the Court finds that there is no reversible error.

A.    **The ALJ's RFC Is Supported by Substantial Evidence**

In assessing a claimant's RFC at step four, the ALJ must consider the combined effect of all of the claimant's medically determinable impairments, and review all of the evidence in the record. *Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013); *see* 20 C.F.R. §§ 404.1545(a)(2) and (3), 416.945(a)(2) and (3). Most importantly, the ALJ's "RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence." *Wells*, 727 F.3d at 1065 (quoting SSR 96-8p, 1996 WL 374184, at *7). When the ALJ fails to provide a narrative discussion describing how the evidence supports each conclusion, citing to specific medical facts and nonmedical evidence, the court will conclude that his RFC conclusions are not supported by substantial evidence. *See Southard v. Barnhart*, 72 F. App'x 781, 784-85 (10th Cir. 2003). The ALJ's decision must be sufficiently articulated so that it is capable of meaningful review. *See Spicer v. Barnhart*, 64 F. App'x 173, 177-78 (10th Cir. 2003).

The Court will address each of Ms. Tenorio's arguments in turn.

1.    **Consideration of Additional Evidence**

After the ALJ's September 1, 2015, determination, Ms. Tenorio submitted additional evidence to the Appeals Council for its review and consideration, which the Appeals Council made part of the record.[6] (Tr. 6-7.) In its decision denying Ms. Tenorio's request for review, the Appeals Council specifically stated that they

> looked at a letter describing future treatment plans dated November 16, 2015 (3 pages), an attendance agreement with Presbyterian Outpatient Rehabilitation Services dated November 13, 2015 (10 pages), and an undated information package on autoimmune diseases received October 15, 2015 (7 pages). The Administrative Law Judge decided your case through September 1, 2015. This

---

[6] The evidence made part of the record included Exhibits 24E (Tr. 263-68), 16F (Tr. 651-56), 17F (Tr. 657-60), 18F (Tr. 661-62), 19F (Tr. 663-68), 20F (Tr. 669-730), 21F (Tr. 731-802, 22F (Tr. 803-41), 23F (Tr. 842-62) and 24F (Tr. 863-64).

new information is about a later time. Therefore, it does not affect the decision about whether you were disabled beginning on or before September 1, 2015.

(Tr. 2.) Ms. Tenorio argues that the Appeals Council committed legal error when it determined, without more, that the November 2015 medical evidence, specifically the November 10, 2015, medical source statements completed by CNP Christine Lujan-Pino, was not related to the relevant period of time. (Doc. 22 at 13-14.) She contends that medical source statements qualify as new, material and temporally relevant because they relate to Ms. Tenorio's history of osteoarthritis and her worsening mental impairments. (*Id*. at 14, Doc. 25 at 1-5.) The Commissioner asserts that the Appeals Council properly noted it considered the new evidence and was not required to provide an analysis to explain its reasons for declining review.[7] (Doc. 24 at 6-7.)

The Appeals Council will grant review of a case if, *inter alia*, "the claimant submits additional evidence that is new, material, and related to the period on or before the date of the ALJ decision." 20 C.F.R. §§ 404.970(b) and 416.1470(b) *see also Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004) (holding that under 20 C.F.R. §§ 404.970(b) and 416.1470(b) the Appeals Council must consider evidence submitted with a request for review if it is new, material, and related to the period on or before the date of the ALJ's decision).

This means the evidence is:

1. Not part of the claim(s) record as of the date of the ALJ decision;

2. Relevant, *i.e.*, involves or is directly related to issues adjudicated by the ALJ; and

---

[7] Ms. Tenorio explained in her Reply that the Commissioner had misunderstood her argument and that she was not arguing a lack of analysis, but instead that the Appeals Council erred in its determination that the evidence submitted was about a later time. (Doc. 25 at 1-5.) Because the Court finds that Ms. Tenorio's argument has no merit, there is no need for the Commissioner to provide a surreply.

3. Relates to the period on or before the date of the ALJ, meaning it is (1) dated before or on the date of the ALJ decision, or (2) post-dates the ALJ decision but is reasonably related to the time period adjudicated by the ALJ.

NOTE 1: The AC does not apply a strict deadline when determining if post-dated evidence relates to the period at issue. There are circumstances when evidence dated after the ALJ decision relates to the period at issue. For example, a statement may relate to the period at issue when it postdates the decision but makes a direct reference to the time period adjudicated by the ALJ. This may be especially important in a claim involving a date last insured (DLI) where a statement from a treating source dated after an ALJ decision specifically addresses the time period before the DLI.

Commissioner's Hearings, Appeals and Litigation Manual ("HALLEX") I-3-3-6(B); *see also*

*Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003) (affirming that evidence is new if it is

not duplicative or cumulative, and is material if there is a reasonable possibility it could change

the outcome). The Tenth Circuit has repeatedly held that whether evidence is "new, material and

chronologically pertinent is a question of law subject to our *de novo* review." *Krauser v. Astrue*,

638 F.3d 1324, 1328 (10th Cir. 2011) (quoting *Threet*, 353 F.3d at 1191) (citing *Chambers v.*

*Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004)).

If the evidence does not qualify, it plays no further role in judicial review of the Commissioner's decision. If the evidence does qualify and the Appeals Council considered it "in connection with the claimant's request for administrative review (regardless of whether review was ultimately denied), it becomes part of the record we assess in evaluating the Commissioner's denial of benefits under the substantial-evidence standard." Finally, if the evidence qualifies but the Appeals Council did not consider it, the case should be remanded for further proceedings.

*Chambers*, 389 F.3d at 1142 (quoting *O'Dell v. Shalala*, 44 F.3d 855, 859 (10th Cir. 1994)).

"[O]ur general rule of *de novo* review permits us to resolve the matter and remand if the Appeals

Council erroneously rejected the evidence." *Krauser*, 638 F.3d at 1328 (citing *Chambers*, 389

F.3d at 1142).

Thus, whether the November 2015 medical source statements are new, material, and chronologically pertinent is a question of law subject to *de novo* review. *Threet*, 353 F.3d at 1191. Although the Appeals Council determined that the newly submitted evidence was not related to the relevant time period, the Court addresses all three criteria as part of its *de novo* review.

The November 2015 medical source statements are new evidence. "Evidence is new within the meaning of 404.970(b) [and 416.1470(b)] if it is not duplicative or cumulative." *Threet*, 353 F.3d at 1191 (citations omitted). The November 2015 medical source statements were not available to the ALJ at the time he made his decision, and they are neither duplicative nor cumulative. Thus, the evidence is considered new.

The November 2015 medical source statements are material only in part. Evidence is material to the determination of disability "if there is a reasonable possibility that [it] would have changed the outcome." *Threet,* 353 F.3d at 1191 (citations omitted). On November 10, 2015, CNP Lujan-Pino assessed functional limitations regarding Ms. Tenorio's ability to do work-related physical activities based on Ms. Tenorio's recent autoimmune disease and osteoarthritis diagnoses. (Tr. 847-49.) These new diagnoses, however, do not form part of the basis for Ms. Tenorio's allegations that she was disabled during the relevant time period.[8] Because these

---

[8] Ms. Tenorio did not allege disability based on autoimmune disease or osteoarthritis, nor did she report or testify she had exertional limitations related to either. On September 29, 2015, laboratory studies demonstrated Ms. Tenorio was positive for antinuclear antibodies, which could indicate an autoimmune disease. (Tr. 654, 687-88.) Ms. Tenorio was scheduled for additional testing. (Tr. 843.) On September 29, 2015, radiologic studies demonstrated Ms. Tenorio had degenerative disease in her lumbar spine, knees, and left shoulder. (Tr. 664.) On November 2, 2015, PA Mitchell Constant of Presbyterian Medical Group Orthopedics diagnosed Ms. Tenorio with chondromalacia-patellofemoral pain syndrome (both knees) and osteoarthritis (both knees and both shoulders). (Tr. 854-55.) Ms. Tenorio argues that the record evidence shows a history of left knee injury and back and shoulder pain prior to the date of last insured. (Doc. 25 at 1.) Ms. Tenorio cites two records dated several years before her alleged onset date; *i.e.,* Ms. Tenorio twisted her right knee on November 21, 2003 (Tr. 761); and Ms. Tenorio fell on her left knee on February 23, 2004 (Tr. 819). Ms. Tenorio cites one record during the relevant period of time related to knee pain; *i.e.,* on July 3, 2014, she presented to CNP Lujan-Pino for follow up on her thyroid disorder and complained of knee pain during the review of systems. (Tr. 529.) CNP Lujan-Pino did not make an assessment, order any diagnostic studies, or prescribe any treatment related to Ms. Tenorio's reported knee pain on that date. (Tr. 530.) There is no other evidence in the

diagnoses do not bear on whether Ms. Tenorio was disabled during the period of time under consideration, this evidence is not material. *See Chambers*, 389 F.2d at 1144 (finding that evidence submitted for the first time to the Appeals Council was not material where it related to conditions that had not been presented to the ALJ or at any time previously.)

In contrast, Ms. Tenorio's application does assert limitations based on work-related mental activities and the ALJ found her severely impaired in this area. Thus, CNP Lujan-Pino's assessment that Ms. Tenorio has limited ability to do work-related mental activities as a result of anxiety disorder does relate to an impairment Ms. Tenorio asserted in her application. (Tr. 37, 849-52.) Because CNP Lujan-Pino assessed certain marked limitations that, if supported by substantial evidence, reasonably could have changed the outcome of the ALJ's determination, this evidence is material.

Even though material, however, these November 2015 medical source statements are not chronologically pertinent because they do not relate to the time period the ALJ adjudicated, *i.e.,* the period on or before the date of the ALJ's decision. *Chambers*, 389 F.3d at 1142. Here, the ALJ issued his decision on September 1, 2015. (Tr. 32-47.) CNP Lujan-Pino's November 2015 statements, then, clearly come after the period the ALJ adjudicated. Further, CNP Lujan-Pino's November 2015 makes no reference to Ms. Tenorio's status during the time period the ALJ adjudicated. To the contrary, in a letter addressed to the Social Security Administration that accompanied the November 10, 2015, medical source statements, CNP Lujan-Pino discussed Ms. Tenorio's *recent* diagnoses and provided *recent* documentation in support of Ms. Tenorio's different medical conditions. (Tr. 843.) She also explicitly stated that

---

Administrative Record related to knee pain. Further, there is no evidence in the Administrative Record that demonstrates a history of back and/or shoulder pain, or that Ms. Tenorio reported back and/or shoulder pain during the relevant period of time.

> [i]t is my medical opinion that, given all of Ms. Tenorio's heath [sic] and medical conditions and issues, she can no longer be expected to ever be employable again. The medical evidence shows that, *now and into the future*, Edwina can no longer sustain a position of employment due to her overall health conditions.

(Tr. 843.) (Emphasis added.) This language demonstrates that the limitations assessed in CNP Lujan-Pino's November 2015 statements do not relate back to the period of time currently under consideration, but instead address Ms. Tenorio's medical status as of November 10, 2015.

For the foregoing reasons, the Court finds the Appeals Council properly determined that the November 2015 medical evidence was about a later date. As such, there is no reversible error as to this issue.

### 2. The ALJ Properly Evaluated CNP Lujan-Pino's December 2012 Medical Source Statement

Ms. Tenorio argues that the ALJ's RFC is inconsistent with CNP Lujan-Pino's December 2012 and November 2015 assessments, and that the ALJ failed to provide legitimate reasons for discounting the December 2012 assessment. (Doc. 22 at 14-18.) As discussed above, CNP Lujan-Pino's November 2015 assessments were not before the ALJ and the Appeals Council did not err in determining that these assessments did not relate to the period the ALJ adjudicated. *See* Section III.A.1, *supra*. The only part of Ms. Tenorio's argument remaining, therefore, is whether the ALJ provided legitimate reasons for the weight he accorded CNP Lujan-Pino's December 2012 assessment.

On December 4, 2012, CNP Lujan-Pino completed a *Medical Source Statement Concerning the Nature and Severity of an Individual's Mental Impairment* on Ms. Tenorio's behalf. (Tr. 380-84.) In the medical source statement, CNP Lujan-Pino assessed both mild and moderate mental limitations based on Ms. Tenorio's panic disorder and hypothyroidism.[9] (Tr.

---

[9] CNP Lujan-Pino assessed moderate limitations in Ms. Tenorio's ability to (1) understand and remember detailed instructions; (2) carry out detailed instructions; (3) maintain attention and concentration for extended periods (the

380-384.)  When asked what date Ms. Tenorio became unable to perform her job, CNP Lujan-Pino noted that Ms. Tenorio "was always capable."  (Tr. 384.)  CNP Lujan-Pino also prepared a concurrent transmittal letter in which she stated that she had seen Ms. Tenorio four times since 2008 and that she recalled her as "being essentially physically healthy."  (Tr. 385.)  She also noted that Ms. Tenorio "did have anxiety, which seemed to exacerbate her stammering."  (*Id.*)  The ALJ accorded CNP Lujan-Pino's opinion little weight "because it contains no explanations for the conclusions and is not consistent with the record as a whole."  (Tr. 44.)  The ALJ also stated that the "checklist-style form" appeared to have been completed as an accommodation.  (*Id.*)  The ALJ noted that he considered her opinion as that from an "other source."  (*Id.*)

Ms. Tenorio argues that CNP Lujan-Pino's use of a "checklist-style form" is not a proper basis for discounting the assessment.  (Doc. 22 at 16-17.)  She further argues that any lack of explanation in the December 2012 assessment was cured by CNP Lujan-Pino's explanations in the November 2015 assessments.  (*Id.* at 17.)  Finally, Ms. Tenorio argues that to the extent the ALJ discounted CNP Lujan-Pino's opinion because of her "other source" status, it was improper to do so because CNP Lujan-Pino did not provide a medical diagnosis but assessed Ms. Tenorio's functional limitations.  (*Id.* at 17-18.)  The Commissioner contends that the ALJ reasonably discounted CNP Lujan-Pino's opinion regarding the nature and severity of Ms. Tenorio's mental impairments.  (Doc. 24 at 7-8.)

---

approximately 2-hour segments between arrival and first break, lunch, second, break and departure); (4) sustain an ordinary routine without special supervision; (5) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (6) interact appropriately with the general public; (7) accept instructions and respond appropriately to criticism from supervisors; (8) respond appropriately to changes in the work setting; (9) travel in unfamiliar places or to use public transportation; and (10) set realistic goals or to make plans independently of others.  (Tr. 380-82.)

The regulations contemplate the use of information from "other sources," both medical[10] and non-medical,[11] "to show the severity of an individual's impairment(s) and how it affects the individual's ability to function." *Frantz v. Astrue*, 509 F.3d 1299, 1301 (10th Cir. 2007) (citing 20 C.F.R. §§ 416.902); *see* SSR 06-03p, 2006 WL 2329939, at *2.[12] "Information from these 'other sources cannot establish the existence of a medically determinable impairment. Instead, there must be evidence from an 'acceptable medical source'[13] for this purpose." SSR 06-03p, 2006 WL 2329939, at *2. An ALJ is required to explain the weight given to opinions from other medical sources and non-medical sources who have seen a claimant in their professional capacity, "or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." *Id.* at *6; *see also Keyes-Zachary v. Astrue,* 695 F.3d 1156, 1163 (10th Cir. 2012) (finding that ALJ was required to explain the amount of weight given to other medical source opinion or sufficiently permit reviewer to follow adjudicator's reasoning). The weight given to this evidence will vary according to the particular facts of the case, the source of the opinion, the source's qualifications, the issues that the opinion

---

[10] For claims filed before March 27, 2017, other medical sources are defined as nurse practitioners, physician assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapist. SSR 06-03p, 2006 WL 2329939, at *2; SSR 96-2p, 2017 WL 3928298.

[11] For claims filed before March 27, 2017, non-medical sources include, but are not limited to, educational personnel, such as school teachers, counselors, early intervention team members, developmental center workers, and daycare center workers; public and private social welfare agency personnel, rehabilitation counselors; and spouses, parents and other caregivers, siblings, other relatives, friends, neighbors, clergy, and employers. SSR 06-03p, 2006 WL 2329939, at *2; SSR 96-2p, 2017 WL 3928298.

[12] SSR 06-3p is rescinded for claims filed on or after March 27, 2017. SSR 96-2p, 2017 WL 3928298, at *1. For claims filed after March 27, 2017, all medical sources can make evidence that are categorized and considered as medical opinions. *Id.* at *2.

[13] For claimed filed before March 27, 2017, "acceptable medical sources" are licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists. SSR 06-03p, 2006 WL 2329939, at *1; SSR 96-2p, 2017 WL 3928298.

is about, and other factors, *i.e.,* how long the source has known and how frequently the source has seen the individual; how consistent the opinion is with other evidence; the degree to which the source presents relevant evidence to support an opinion; how well the source explains the opinion; whether the source has a specialty or area of expertise related to the individual's impairment; and any other facts that tend to support or refute the opinion. SSR 06-03p, 2006 WL 2329939, at *4-5.

As an initial matter, the ALJ's speculation that CNP Lujan-Pino completed the assessment as an accommodation to Ms. Tenorio is not a proper basis for discounting a medical opinion. *See Langley,* 373 F.3d at 1121 (rejecting as speculative the ALJ's conclusion that a medical report was simply an act of courtesy to a patient); *see also* 20 C.F.R. §§ 404.1527(c) and 416.927(c) (setting forth appropriate factors for evaluating opinion evidence for claims filed before March 27, 2017). Further, case law addressing medical source opinions expressed on checkbox-style forms underscores that the critical question is whether the checkbox findings, either on the form itself or elsewhere in the record, are supported by substantial evidence. *See Anderson*, 319 F. App'x at 723-24 (finding that although the checklist forms completed by the treating physicians recorded limited clinical comments, there were other materials that supported the conclusions in the forms, including cardiovascular medical reports, echocardiograms, and examination notes); *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008) (holding that the magistrate judge incorrectly determined that it was unnecessary for the ALJ to discuss an examining source's opinion because it was presented on a checklist form where it was clear the physician examined the claimant, made notes or circled medical terms for her findings on the form at issue, and that the form was "clearly set up to record the results of a thorough physical examination"); *Frey v. Bowen*, 816 F.2d 508, 515 (10th Cir. 1987) (holding that evaluation forms,

standing alone, unaccompanied by thorough written reports or persuasive testimony, are not substantial evidence); *Fierro v. Colvin*, 2014 WL 12791246, at \*4 (D.N.M. May 28, 2014) (rejecting the Commissioner's argument that the ALJ was entitled to reject a treating physician's opinion merely because it was provided on a checkbox form and finding that the opinion was supported by treatment notes, treatment plans, and other documentation). Thus, while CNP Lujan-Pino's mere use of a checkbox-style form to assess Ms. Tenorio's ability to do work-related mental functions does not provide a basis to discount her assessment, her assessment can be discounted if it is not supported by substantial evidence. Here, as discussed below, the ALJ properly discounted her December 4, 2012, assessment because it was not supported by substantial evidence.

The ALJ's explanations for discounting CNP Lujan-Pino's December 2, 2012, assessment are legitimate and supported by substantial evidence. Here, the ALJ explained that CNP Lujan-Pino's assessment contained no explanations for her conclusions and it was not consistent with the record as a whole. (Tr. 44.) These are proper bases for discounting medical opinion evidence. *See* 20 C.F.R. §§ 404.1527(c)(3) and (4), 416.927(c)(3) and (4) (explaining that the more a medical source presents relevant evidence to support a medical opinion, and the more consistent a medical opinion is with the record as a whole, the more weight will be accorded to that opinion.) Further, the ALJ's explanations are supported by substantial evidence. Ms. Tenorio concedes that CNP Lujan-Pino provided no explanations for her assessed limitations in December 2012, but argues that the November 2015 assessment contained "ample explanation for her findings." (Doc. 22 at 17.) As previously discussed, however, the November 2015 assessment does not relate to the period the ALJ adjudicated. *See* Section III.A.1*, supra*. Thus, this argument necessarily fails. Additionally, although CNP Lujan-Pino represented she

had seen Ms. Tenorio four times from 2008 to 2012 (Tr. 385), the record contains only one record prior to the date she completed the December 4, 2012, medical source statement, at which time Ms. Tenorio denied any symptoms associated with her alleged mental impairments.[14] (Doc. 371-79.) As such, CNP Lujan-Pino's one treatment note does not support her assessed limitations because it made no reference to any complaints about or treatment for Ms. Tenorio's anxiety, nor did she indicate any observed signs or symptoms related to Ms. Tenorio's alleged mental limitations. Finally, other medical source evidence in the record supports the ALJ's explanation that CNP Lujan-Pino's assessment was not consistent with the record as a whole.[15]

For the foregoing reasons, the ALJ provided legitimate reasons that are supported by substantial evidence for the weight he accorded CNP Lujan-Pino's December 4, 2012, assessment.

---

[14] On February 27, 2012, Ms. Tenorio presented to CNP Lujan-Pino to get prescription medication for her thyroid condition. (Tr. 375.) CNP Lujan-Pino noted that Ms. Tenorio had been absent for one year due to lack of insurance. (*Id.*) During the review of systems, Ms. Tenorio denied any sleep disturbance, dysphoric mood, nervousness, or anxiety. (Tr. 378.) On physical exam, CNP Lujan-Pino noted, *inter alia,* that Ms. Tenorio had a normal mood and affect, and that her behavior, judgment and thought content were all normal. (*Id.*) CNP Lujan-Pino did not make any assessment related to Ms. Tenorio's alleged mental impairments, nor did she recommend any treatment or prescribe any medications related to her mental impairments. (*Id.*)

[15] On January 28, 2013, Clifford Morgan, Ph.D., psychologically evaluated Ms. Tenorio on a referral from the Division of Vocational Rehabilitation. (Tr. 644-49.) Dr. Morgan took Ms. Tenorio's histories and administered psychological testing. (*Id.*) Dr. Morgan summarized, *inter alia*, that Ms. Tenorio had excellent verbal skills, some difficulty with nonverbal performance, was personable and had no interpersonal difficulties, appeared very motivated, had a history of working hard to improve herself, had a stable personality with no significant mental health or substance abuse or legal problems, and handled work stress well although she had some problems with one or more supervisors at Wal-Mart which led to her termination. (Tr. 648.)

On August 5, 2018, nonexamining State agency psychological consultant Donald K. Gucker, Ph.D., reviewed the medical evidence record and, although assessing certain moderate limitations, concluded that Ms. Tenorio could "understand, remember, and carry out simple instructions, make simple decisions, attend and concentrate for two hours at a time, interact adequately with co-workers and supervisors, and respond appropriately to changes in routine work settings." (Tr. 90, 103.) On December 17, 2013, at reconsideration, nonexamining State agency psychological consultant Ralph Robinowitz, Ph.D., affirmed Dr. Gucker's assessment. (Tr. 115, 130.)

### 3. The ALJ's RFC Properly Accounted for the Limitations Assessed by the Nonexamining State Agency Psychological Consultants

Ms. Tenorio argues that, having accorded great weight to nonexamining State agency psychological consultants Dr. Gucker's and Dr. Robinowitz's assessments, the ALJ failed to account for *all* of their assessed limitations as he was required to do. (Doc. 22 at 18-19.) In particular, Ms. Tenorio argues that the ALJ failed to account for part of Dr. Gucker's narrative conclusion that Ms. Tenorio could understand, remember, and carry out *simple instructions*, and two of Dr. Gucker's and Dr. Robinowitz's worksheet moderate limitations; *i.e.,* that she was moderately impaired in her ability to accept instructions from and respond appropriately to criticism from supervisors and to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (Doc. 22 at 18-19.) The Commissioner contends that the ALJ's RFC fully accounted for the nonexamining State agency psychological consultant's narrative conclusions as he was required to do. (Doc. 24 at 14-15.)

On August 5, 2018, nonexamining State agency psychological consultant Donald K. Gucker, Ph.D., reviewed and discussed the medical evidence record and Ms. Tenorio's Adult Function Report and, although assessing certain moderate limitations,[16] concluded in his narrative discussion that Ms. Tenorio could "understand, remember, and carry out simple instructions, make simple decisions, attend and concentrate for two hours at a time, interact

---

[16] Dr. Gucker assessed that Ms. Tenorio had moderate limitations in her ability to (1) understand and remember detailed instructions; (2) carry out detailed instructions; (3) maintain attention and concentration for extended periods; (4) work in coordination with or in proximity to others without being distracted by them; (5) complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; (6) interact appropriately with the general public; (7) accept instructions and respond appropriately to criticism from supervisors; (8) get along with coworkers or peers without distracting them or exhibiting behavioral extremes; (9) respond appropriately to changes in the work setting; and (10) set realistic goals or make plans independently of others. (Tr. 88-89, 101-102.)

adequately with co-workers and supervisors, and respond appropriately to changes in routine work settings."[17]  (Tr. 90, 103.)  On December 17, 2013, at reconsideration, nonexamining State agency psychological consultant Ralph Robinowitz, Ph.D., affirmed Dr. Gucker's assessed limitations and conclusion.  (Tr. 115, 130.)  The ALJ, in turn, assessed that Ms. Tenorio was

> limited to unskilled work performed in a work environment that does not include fast-paced production requirements, involving only simple work-related decisions, with few, if any, changes in the workplace.  She can tolerate only occasional interaction with the public, incidental to the work performed, and only occasional interaction with coworkers.  The claimant cannot perform math beyond the fifth grade level, and is limited to occupations that do not require fast processing and quick hand-eye coordination and detail.  The claimant is limited to occupations that do not require frequent verbal communication.

(Tr. 41.)

In an unpublished, but persuasive opinion, the Tenth Circuit specifically addressed the ALJ's responsibility in evaluating a State agency psychological consultant's MRFCA in light of the instructions printed on the forms and certain sections of the POMS that describe the separate functions of Sections I and III.  Tenth Circuit case law instructs that an ALJ may not "turn a blind eye to moderate Section I limitations" and that

> [i]f a consultant's Section III narrative fails to describe the effect that each of the Section I moderate limitations would have on the claimant's ability, or if it contradicts limitations marked in Section I, the MRFCA cannot properly be considered part of the substantial evidence supporting an ALJ's RFC finding.

---

[17] The Court notes that the consultants did not use special Form SSA-4734-F4-SUP which contains three sections, one of which is a worksheet for rating functional limitations (Section I) and one of which is for recording the mental RFC determination (Section III).  Instead, they used an MRFCA form which contains the same worksheet questions, the same rating system, and explains that "[t]he questions below help determine the individual's ability to perform sustained work activities.  However, the actual mental residual functional capacity assessment is recorded in the narrative discussion(s), which describe how the evidence supports each conclusion."  (Tr. 88, 101.)  As such, the structure is essentially the same; *i.e.,* the consultant answers the worksheet questions that form the basis of the actual mental residual capacity assessment contained in the narrative discussion.

*Carver v. Colvin*, 600 F. App'x 616, 619 (10th Cir. 2015) (unpublished).[18]  Further, when an ALJ

properly accounts for the effects of the limitations enumerated in Section I of the MRFCA, there

is no reversible error in evaluating opinion evidence or assessing a claimant's RFC.  *See Nelson*

*v. Colvin*, 655 F. App'x 626, 629 (10th Cir. 2016) (finding no reversible error regarding the

ALJ's mental RFC assessment because the ALJ effectively accounted for *all* the limitations

indicated in Section I of the MRFCA) (emphasis in original)[19]; *Lee v. Colvin*, 631 F. App'x 538,

541 (10th Cir. 2015) (finding no reversible error regarding the ALJ's RFC assessment because

the ALJ did not ignore the Section I limitations and the RFC assessment reflected the moderate

limitations identified in Section I of the MRFCA);[20] *Fulton v. Colvin*, 631 F. App'x 498, 502

---

[18] In Section I, the State agency consultant found that the claimant had *moderate* limitations in the ability to (1) understand and remember detailed instructions; (2) carry out detailed instructions; (3) interact appropriately with the general public; and (4) accept instructions and respond appropriately to criticism from supervisors.  *Carver v. Colvin*, 600 F. App'x 616, 618 (10th Cir. 2015).  In Section III, the State agency consultant assessed that the claimant could "perform simple tasks with routine supervision, relate to supervisors and peers on a superficial work basis, relate superficially to the general public on a limited basis, and adapt to simple work situation."  *Id.*  The claimant argued that the State agency consultant's Section III assessment failed to account for the Section I moderate limitation in accepting instructions and responding appropriately to criticism from supervisors.  *Id.* at 618-19.  The Court disagreed and held that the Section III assessment that claimant could relate to supervisors and peers on a superficial work basis adequately encapsulated the Section I moderate limitation in claimant's ability to accept instructions and respond appropriately to criticism from supervisors.  *Id.* at 619.  The Court further held that the ALJ's RFC sufficiently captured the essence of the State agency consultant's Section III assessment by limiting claimant to simple work and stating that claimant could "interact with co-workers and supervisors, under routine supervision."  *Id.* at 620.

[19] In Section I, the State agency consultant found the claimant had *moderate* limitations in the ability to maintain attention and concentration for extended periods, and *marked* limitations in the ability to understand and remember detailed instructions, carry out detailed instructions, and interact appropriately with the public.  *Nelson*, 655 F. App'x 626, 628 (10th Cir. 2016.)  In Section III, the State agency consultant assessed that "claimant is capable of carrying out simple instructions with routine supervision.  Claimant is capable of interacting appropriately with supervisors and coworkers on a superficial basis but not with the general public.  Claimant can adapt to a work situation."  *Id.* at 629.  The Court noted that the ALJ, in turn and without error, incorporated the Section III findings into the RFC.  *Id.* The Court further noted that "[m]ore to the point, by limiting [claimant] to unskilled work, the ALJ effectively accounted for *all* the limitations noted in Section I[.]"  *Id.* (emphasis in original).  The Court  explained that "[e]ven though [the State agency consultant] noted marked limitations in [claimant's] ability to remember detailed instructions, carry out detailed instructions, and interact appropriately with the public, unskilled work does not require these abilities, nor does it require the ability to maintain attention and concentration for extended periods[.]"  *Id.*

[20] In Section I, the State agency consultant found the claimant had *moderate* limitations in the ability to (1) maintain attention and concentration for extended periods; (2) accept instructions and respond appropriately to criticism from supervisors; and (3) get along with coworkers or peers without distracting them or exhibiting behavioral extremes."  *Lee v. Colvin*, 631 F. App'x 538, 542 (10th Cir. 2015). In Section III, the State agency consultant assessed that claimant could perform simple tasks, work with routine supervision, relate to supervisors on a superficial basis, and relate to peers on a superficial basis.  *Id.*  The ALJ adopted the Section III assessment.  Id. at 541.  The Court held that the

(10th Cir. 2015) (finding that the ALJ did not err in evaluating opinion evidence where he discussed only certain Section III findings because the ALJ acknowledged the distinction between Section I and Section III of the MRFCA and the Court found no contradiction between the two sections);[21] *Carver*, 600 F. App'x at 619 (finding no reversible error regarding the ALJ's mental RFC assessment because the ALJ sufficiently captured the essence of psychological consultant's Section III narrative which had adequately encapsulated the Section I limitations). Thus, the questions before the Court are whether Dr. Gucker's and Dr. Robinowitz's narrative conclusions adequately encapsulated the moderate limitations they assessed and whether the ALJ, in turn, sufficiently captured the essence of their conclusions.

Dr. Gucker's narrative conclusion adequately encapsulated the moderate limitations he assessed and clearly related in terms of work-related functions Ms. Tenorio's ability to do work-related mental activities. Here, the narrative portion of Dr. Gucker's MRFCA is detailed and he explains his review of the record evidence and the bases of his conclusion.[22] Similarly,

---

Section III narrative and the ALJ's RFC "explained, accounted for, and delimited each of the moderate limitations expressed in the Section I of the MRFCA," and there was no error. *Id.*

[21] In Section I, the State agency consultant found the claimant had moderate limitations in the ability to (1) work in coordination with or proximity to others without being distracted by them; and (2) respond appropriately to changes in the work setting. *Fulton v. Colvin*, 631 F. App'x 498, 501-02 (10th Cir. 2015). The State agency consultant found the claimant had marked limitations in the ability to interact appropriately with the general public. *Id.* In Section III, the State agency consultant assessed that the claimant was able to perform simple and some complex tasks under ordinary supervision, able to interact with co-workers and supervisors for incidental work purposes but should avoid public contact, and able to adapt to some work change. *Id.* The claimant argued that the ALJ erred by failing to account for certain of the State agency consultant's Section I findings. Id. The Court held that the ALJ properly looked to the Section III narrative as the State agency consultant's opinion regarding mental RFC because the Section III assessment did not contradict the effects of the Section I limitations. *Id.*

[22] Dr. Gucker discussed the medical evidence he reviewed, including CNP Lujan-Pino's February 27, 2012, treatment note in which Ms. Tenorio's mental status exam was normal and noted no psychiatric diagnosis or treatment. (Tr. 89.) Dr. Gucker discussed CNP Lujan-Pino's December 4, 2012, medical source statement, and Dr. Morgan's January 28, 2013, psychological evaluation summary and conclusions. (Tr. 90.) Dr. Gucker also discussed Ms. Tenorio's Adult Function Report, in which she reported no limitations in personal care; the ability to prepare meals, do some household chores, drive, shop in stores, participate in some interests and social activities; and limitations in handling stress, changes in routine, and understanding. (*Id.*)

Dr. Robinowitz listed the new medical evidence he reviewed at reconsideration.[23]  (Tr. 115, 130.)  The ALJ, in turn, sufficiently captured the essence, and tempered, Dr. Gucker's and Dr. Robinowitz's conclusions,[24] and related Ms. Tenorio's ability to do work-related mental activities in terms of work-related functions.  For example, in the area of understanding and memory, Dr. Gucker and Dr. Robinowitz assessed that Ms. Tenorio could "understand, remember, and carry out simple instructions, make simple decisions, [and] attend and concentrate for two hours at a time."  (Tr. 90, 103, 115, 130.)  The ALJ, in turn, assessed that Ms. Tenorio was limited to "unskilled work performed in a work environment that does not include fast-paced production requirements, involving only simple work-related decisions, . . . . The claimant cannot perform math beyond the fifth grade level, and is limited to occupations that do not require fast processing and quick hand-eye coordination and detail."  (Tr. 41.)  Although the ALJ did not specifically reference a limitation to simple instructions, unskilled work generally requires the ability to, *inter alia*, understand, remember, and carry out simple instructions.  *Vigil v. Colvin*, 805 F.3d 1199, 1204 (10th Cir. 2015) (citing POMS DI 25020.010, § B(3), quoting SSR 96-9p, 1996 WL 374185, at *9).  Dr. Gucker and Dr. Robinowitz assessed that Ms. Tenorio could "interact adequately with co-workers and supervisors."  (Tr. 90, 103, 115, 130.)  The ALJ, in turn, assessed that Ms. Tenorio could "tolerate only occasional interaction with the public, incidental to the work performed, and only occasional interaction with coworkers.  . . .  The claimant is limited to occupations that do not require frequent verbal

[23] The only new medical record evidence was a treatment note dated October 22, 2013, that noted normal mood, affect and behavior.  (Tr. 115, 130.)  The record supports this finding.  (Tr. 411.)  Dr. Robinowitz also noted that Ms. Tenorio "has college education and has significant amount of work hx, and although clmt has always stuttered it appears that it is not significantly limiting."  (Tr. 115, 130.)

[24] *See Chapo v. Astrue*, 682 F.3d 1285, 1288 (10th Cir. 2012) (finding that an ALJ does not commit reversible error by electing to temper findings for the claimant's benefit).

communication."[25] (Tr. 41.)  Finally, Dr. Gucker and Dr. Robinowitz assessed that Ms. Tenorio could "respond appropriately to changes in routine work settings."  (Tr. 90, 103, 115, 130.)  The ALJ, in turn, assessed that Ms. Tenorio could perform in a work environment "with few, if any, changes in the workplace."  (Tr. 41.)  The ALJ, therefore, sufficiently captured the essence of the nonexamining State agency psychological consultants' limitations.

For the foregoing reasons, the Court finds that the ALJ's RFC properly accounted for the limitations assessed by the nonexamining State agency psychological consultants.  As such, there is no reversible error as to this issue.

### 4. The ALJ's Evaluation of the Evidence Related to the Intensity, Persistence, and Limiting Effect of Her Alleged Impairments Is Supported by Substantial Evidence

Ms. Tenorio argues that the ALJ relied on improper factors in evaluating her allegations of disabling anxiety.  (Doc. 22 at 19-21.)  Specifically, Ms. Tenorio argues that the ALJ improperly relied on Ms. Tenorio's lack of mental health care and her daily activities to find her not credible, and improperly discounted Ms. Tenorio's boyfriend's statements.  (*Id.*)  The Commissioner contends that the ALJ considered the regulatory factors supported by record evidence to find Ms. Tenorio's statements regarding her limitations were not consistent with the record.  (Doc. 24 at 16-18.)

"Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence."  *Wilson v. Astrue*, 602

---

[25] Each of the jobs the ALJ identified at step five has a "people" requirement of eight; *i.e.,* the lowest level of human interaction.  *See Appendix B – Explanation of Data, People, and Things*, 1991 WL 688701 (explaining that the "people" category has a range from zero to eight, with zero requiring the highest level of human interaction and eight requiring the lowest).  As such, the jobs identified do not involve frequent or involved interaction with co-workers, supervisors, or the public.  *Lane v. Colvin*, 643 F. App'x 766, 770 (10th Cir. 2016); *see also Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles* (1993) (describing the talking demands for Laundry Sorter, Finish Inspector and Laundry Folder as "not present"), *available at* https://www.nosscr.org/sco/sco-ocr.pdf, *pp. 203, 205 and 313.*

F.3d 1136, 1144 (10th Cir. 2010) (quoting *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (internal quotation omitted)). Nevertheless, an ALJ's credibility finding "should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Id.; see also* SSR 16-3p, 2016 WL 1119029, at *9 ("it is not sufficient for our adjudicators to make a single, conclusory statement that 'the individual's statements about his or her symptoms have been considered' or that 'the statements about the individual's symptoms are (or are not) supported or consistent.'").

Here, the ALJ's credibility findings are closely and affirmatively linked to substantial evidence. The ALJ found that despite Ms. Tenorio's allegedly disabling impairments, Ms. Tenorio engaged in activities of daily living including preparing meals, performing household chores, shopping, socializing with family, and following recipes.[26] (Tr. 43.) The ALJ found that the overall lack of mental health treatment and mild medical findings diminished the persuasiveness of Ms. Tenorio's allegations.[27] (*Id.*) The ALJ noted that Ms. Tenorio reported to Dr. Morgan that she did not think she needed counseling,[28] and further noted that Dr. Morgan indicated that Ms. Tenorio's speech impediment was not a significant barrier to effective

---

[26] Ms. Tenorio contends her cooking consisted of only frozen dinners, sandwiches, and canned soups or stews. (Doc. 22 at 20.) However, Ms. Tenorio reported that her food choices were constrained by food stamps and not her inability to prepare meals. (Tr. 252.) Ms. Tenorio also contends that her household chores were limited to laundry and dishes (Doc. 22 at 20), but Ms. Tenorio stated her boyfriend also directed her to clean up any mess she made. (Tr. 252.) Ms. Tenorio reported that she goes outside at least twice a day to walk or go to "town." (Tr. 253.) She also reported socializing with her boyfriend and cousin, and that she goes to the library, her cousin's house, Old Town, and the duck pond on a regular basis. (Tr. 254.)

[27] Ms. Tenorio argues that Ms. Tenorio was not required to seek specialized care to legitimize her anxiety or the functional limitations related thereto. (Doc. 22 at 19.) She also argues that she had lost her health insurance after leaving Wal-Mart. (*Id.*) However, the ALJ did not ignore Ms. Tenorio's anxiety. To the contrary, the ALJ determined at step two that Ms. Tenorio's anxiety was a severe impairment. (Tr. 37.) That said, the record supports that even when Ms. Tenorio sought medical care in the absence of health insurance, on February 27, 2012, and July 3, 2014, she did not seek care for her alleged mental impairments and CNP Lujan-Pino indicated no diagnosis of or treatment for mental impairments. (Tr. 378, 529-30.)

[28] The record also supports that Ms. Tenorio reported to Dr. Morgan that she used over the counter stress medications for her anxiety and that they worked well. (Tr. 646.)

25

communication. (*Id.*) The ALJ also found that Ms. Tenorio indicated she stopped working due to interpersonal issues with her managers, and not due to her alleged impairments. (*Id.*) The record supports these findings and they are proper factors to consider in evaluating the intensity, persistence and limiting effects of an individual's symptoms. *See* SSR 16-3p, 2016 WL 1119029, at *7 (listing factors to consider such as, *inter alia*, daily activities, types of medication or treatment, effectiveness of medication or other treatment, and other measures used to relieve symptoms).

Lastly, the ALJ discussed Ms. Tenorio's boyfriend's Third-Party Adult Function Report, and accorded it little weight. (Tr. 44-45.) The ALJ explained that, like Ms. Tenorio's allegations, his statements were not supported by the preponderance of the medical source evidence. (Tr. 44-45.) The ALJ also noted that he had no medical expertise as a basis to observe signs and symptoms related to the intensity of Ms. Tenorio's alleged impairments. (*Id.*) These are proper bases for discounting his report and they are supported by substantial evidence. SSR 06-03p, 2006 WL 2329939, at *4-5.

For the foregoing reasons, the Court finds the ALJ's findings concerning the intensity, persistence, and limiting effects of Ms. Tenorio's symptoms are closely and affirmatively linked to substantial evidence. As such, there is no reversible error as to this issue.

For all of the foregoing reasons, the Court finds that the ALJ applied the correct legal standards in determining Ms. Tenorio's RFC and that it is supported by substantial evidence.

### B.    The ALJ's Step Four Findings

Ms. Tenorio argues that the ALJ erred at step four because (1) the ALJ's RFC was not supported by substantial evidence; (2) the ALJ failed to make specific findings regarding her past relevant work; and (3) the ALJ's findings whether Ms. Tenorio could meet the job demands

despite the mental or physical limitations he found were tentative. (Doc. 22 at 21-23.) The Commissioner contends that the (1) ALJ's RFC was supported by substantial evidence; (2) the ALJ classified Ms. Tenorio's past work using both VE testimony and the DOT; and (3) any error in the ALJ's uncertainty that Ms. Tenorio could perform her past work is harmless error in light of the ALJ's alternative findings at step five. (Doc. 24 at 18-20.)

To determine whether a claimant can perform her past relevant work involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [claimant] can still do despite [his physical and mental] limitations." 20 C.F.R. §§ 404.1545(a)(1) and 416.945(a)(1). Second, the ALJ determines the physical and mental demands of claimant's past work. *Winfrey*, 92 F.3d at 1024. Third, the ALJ determines whether, given claimant's RFC, the claimant is capable of meeting those demands. *Id.* at 1024-25.

The ALJ did not rely on Ms. Tenorio's ability to do her past relevant work to determine she was disabled. At step four, the ALJ explained that having compared the RFC with the physical and mental demands of Ms. Tenorio's past work as a garment sorter, she *may* be able to perform it as actually and generally performed. (Tr. 45.) The ALJ also noted the VE's testimony that Ms. Tenorio's past relevant work as a garment sorter did not require the performance of any of the exertional or nonexertional abilities precluded by the RFC. (*Id.*) The ALJ concluded, however, that

> [n]otwithstanding the vocational expert's testimony that claimant could perform the position of garment sorter as actually and generally performed, there is some uncertainty as to the impact which the limitation to occupations that do not require fast processing and quick hand-eye coordination and detail would have on claimant's ability to perform the cashiering aspects of that job. Given the uncertainties with regard to claimant's ability to perform the garment sorting job, it is necessary to progress to step five.

(Tr. 45.)  Given this explanation, and the Court's conclusion that substantial evidence supports the ALJ's step five findings, even assuming the existence of errors Ms. Tenorio alleges at step four, those errors are harmless.  *See Martinez v. Astrue*, 316 F. App'x 819, 824 (10th Cir. 2009) (any error to make explicit findings at step four was harmless where the ALJ's step five findings were proper).

Thus, the Court finds that Ms. Tenorio's step four arguments cannot support a finding of reversible error.

**C.      The Jobs the ALJ Identified at Step Five Are Consistent With the ALJ's RFC**

With respect to the ALJ's step five findings, Ms. Tenorio argues that the ALJ's hypothetical to the VE was tainted because the ALJ's RFC was not supported by substantial evidence and failed to include all of the limitations that were supported by substantial evidence. (Doc. 22 at 23.)  Ms. Tenorio also argues that the jobs the ALJ identified have a reasoning level of two and are inconsistent with her ability to understand, remember and carry out simple instructions.  (*Id.* at 23-24.)  The Commissioner contends that the ALJ's RFC is supported by substantial evidence, is consistent with unskilled work, and that the Tenth Circuit "has never held that a limitation to simple work conflicts with reasoning level two as defined in the DOT."  (Doc. 24 at 20-21.)

When the disability analysis reaches step five of the sequential process, the burden shifts to the Commissioner to show that "there are sufficient jobs in the national economy for a hypothetical person with [the claimant's] impairments," *Jensen v. Barnhart*, 436 F.3d 1163, 1168 (10th Cir. 2005), "given her age, education, and work experience."  *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007); *see also* 20 C.F.R. §§ 416.960, 416.963-65 (explaining that a claimant's vocational factors of age, education, and work experience are considered, along with

the claimant's RFC, to determine at step five whether there are a significant number of jobs that a claimant can perform).  The Commissioner's showing must be supported by substantial evidence.  *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

The ALJ's step five findings are supported by substantial evidence.  The Court has already found that the ALJ's RFC is supported by substantial evidence.  *See* Section III.A., *supra.*  Thus, this argument is rejected.  As to Ms. Tenorio's second argument, Ms. Tenorio cites to *Paulek v. Colvin*, 662 F. App'x 588 (10th Cir. 2016) (unpublished), to argue that a limitation to simple instructions precludes her from doing level-two reasoning jobs.  The Court is not persuaded.  The court in *Paulek* relied on *Hackett v. Barnhart*, 396 F.3d 1168, 1176 (10th Cir. 2005), to hold that a limitation to simple instructions is inconsistent with level-three reasoning. 662 F. App'x at 594.  *Hackett* had already established that simple work was inconsistent with level-three reasoning.  395 F.3d at 1176.  In rendering its decision, the *Paulek* court cited to *Lucy v. Chater*, 113 F.3d 905, 909 (8th Cir. 1997), where the Eighth Circuit held that simple instructions were inconsistent with both level-two and level-three reasoning.  This Court, however, does not interpret *Paulek*'s reference to *Lucy* as a suggestion, much less a holding in the Tenth Circuit, that level-two reasoning jobs are inconsistent with simple, unskilled work. Instead, *Paulek* established that *Hackett* controls, and that level-three reasoning jobs are inconsistent with both simple work and simple instructions.  Here, the ALJ identified jobs with level-two reasoning that are consistent with the ALJ's RFC for "unskilled work performed in a work environment that does not include fast-paced production requirements, involving only simple work-related decision[.]"  (Tr. 41.)  Therefore, the Court rejects Ms. Tenorio's argument, finds that the ALJ's step five findings are supported by substantial evidence, and concludes there is no reversible error as to this issue.

## IV.  Conclusion

For the reasons stated herein, Ms. Tenorio's *Motion to Reverse and Remand for Rehearing, With Supporting Memorandum* filed September 11, 2017 (Doc.  22.) is **DENIED**.

**IT IS SO ORDERED.**

_____
**STEVEN C. YARBROUGH**
**United States Magistrate Judge,**
**Presiding by Consent**